IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN MARTIN ROTH,<br><br>Petitioner,<br><br>v.<br><br>SHERRY YATES, ADULT DIAGNOSTIC AND TREATMENT CENTER, and CHRISTOPHER S. PORRINO, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY,<br><br>Respondents. | HON. JOHN MICHAEL VAZQUEZ<br><br>Civil Action<br>No. 16-5279 (JMV)<br><br>**OPINION** |

**VAZQUEZ, District Judge:**

**I.    INTRODUCTION**

Presently before the Court is the petition pursuant to 28 U.S.C. § 2254 ("the Petition") (ECF No. 1) of John Martin Roth ("Petitioner"). Petitioner is currently incarcerated at the Adult Diagnostic and Treatment Center ("ADTC") in Avenel, New Jersey (ECF No. 1-2 at 7), where he is serving a New Jersey parole violation term of eighteen years, five months, and eighteen days for a rape conviction and nine hundred sixty-four days for an assault conviction. *State of New Jersey v. Roth*, No. A-6103-12T2, 2015 WL 5944153, at *1 (N.J. Super. Ct. App. Div. Oct. 13, 2015); *Roth v. New Jersey State Parole Bd.*, No. A-4473-10T3, 2012 WL 5499896, at *1 (N.J. Super. Ct. App. Div. Nov. 14, 2012); ECF No. 1-1 at 7-12 and 37; ECF No. 1-2 at 7.

For the reasons stated herein, the Court denies the Petition with prejudice as procedurally defaulted with respect to Grounds One through Seven and not warranting habeas relief with respect to Grounds Eight and Nine. No certificate of appealability shall issue.

## II. BACKGROUND

### A. Factual History

On June 17, 1971, Petitioner was found guilty in New Jersey of rape. He was sentenced to an indeterminate term not to exceed thirty years. He was paroled on November 11, 1978. *Roth*, 2015 WL 5944153, at *1 n.1; *Roth*, 2012 WL 5499896, at *1; ECF No. 1-1 at 7-8 and 37.

In March 1979, New Jersey charged Petitioner with breaking and entering and three counts of assault with intent to rob while armed. He returned to custody. *Roth*, 2015 WL 5944153, at *1 n.1; *Roth*, 2012 WL 5499896, at *1; ECF No. 1-1 at 9-11. On April 23, 1979, he entered a guilty plea on the three counts of assault with intent to rob while armed. *Roth*, 2012 WL 5499896, at *1; ECF No. 1-1 at 12 and 37. On May 25, 1979, he was sentenced to three concurrent terms of three to nine years, to run concurrently to any parole violation. *Ibid*. On June 2, 1981, New Jersey paroled Petitioner to a parole program in the State of Washington. *Roth*, 2015 WL 5944153, at *1 n.1; *Roth*, 2012 WL 5499896, at *1; ECF No. 1-1 at 37. He agreed to abide by the New Jersey State Parole Board's ("NJSPB") conditions of parole, including the requirement that he obey all laws and ordinances. (ECF No. 1-1 at 13-14.)

On September 15, 1981, law enforcement in the State of Washington arrested Petitioner and charged him with rape, robbery, two counts of attempted rape, and attempted robbery. *Roth*, 2015 WL 5944153, at *1 n.1; *Roth*, 2012 WL 5499896, at *1; ECF No. 1-1 at 37. On November 18, 1981, Petitioner was convicted on all counts. *Roth*, 2012 WL 5499896, at *1; ECF No. 1-1 at 15 and 37. On April 22, 1982, the State of Washington sentenced him to an aggregate term of ten years to life imprisonment. *Roth*, 2012 WL 5499896, at *1; ECF No. 1-1 at 15-16.

On December 30, 1982, the NJSPB issued a parole violation warrant because Petitioner failed to obey all laws and ordinances, as evidenced by his Washington convictions. *Roth*, 2015 WL 5944153, at *1 n.1; *Roth*, 2012 WL 5499896, at *1; ECF No. 1-1 at 17 and 37.

On December 15, 2010, Washington paroled Petitioner on his sentence there and returned him to custody of the New Jersey Department of Corrections ("NJDOC"). At that time, New Jersey enforced the parole violation warrant. *Roth*, 2012 WL 5499896, at *1; ECF No. 1-1 at 35 and 41.

### B. Parole Proceedings

On January 14, 2011, the NJSPB conducted Petitioner's parole revocation hearing. *Roth*, 2012 WL 5499896, at *1; ECF No. 1-1 at 37-39. Based on the evidence in the record, as well as Petitioner's admission of guilt, the NJSPB hearing officer sustained the parole violation charge. The officer found that Petitioner had not shown, by clear and convincing evidence, that good cause existed to excuse parole revocation. *Ibid*. The officer recommended that Petitioner be referred to ADTC for a Dalonges evaluation.[1] (ECF No. 1-1 at 39.)

At Petitioner's final parole revocation hearing on March 24, 2011, a two-member NJSPB Panel ("Board Panel") reviewed the record and the hearing officer's January 14, 2011 decision.

---

[1] In *State v. Dalonges*, 319 A.2d 257, 261-62 (N.J. Super. Ct. App. Div. 1974), the Appellate Division of the Superior Court of New Jersey ("Appellate Division") established a three-part test to determine whether parole of inmates convicted under the former Sex Offender Act, New Jersey Stat. Ann. § 2A:164-3 to -13, can be revoked. Regulations adopted subsequent to the *Dalonges* decision incorporate that opinion's factors. Under N.J.S.A. § 10A:71–7.19(c), the evaluation considers "whether the violation(s) of parole conditions reflects emotional or behavioral problems as a sex offender, evidence that that parolee is incapable of making an acceptable social adjustment in the community, and the necessity for continued custodial supervision and further specialized treatment as a sex offender." If the results lead the evaluator to conclude that the violation does not reflect sex-offender-related problems and the Board Panel concurs, the revocation is vacated. On the other hand, the Board Panel will affirm the revocation if the evaluation confirms that the conditions of parole violated reflect behavior problems associated with the parolee's sex offender status, and the parolee is incapable of making the necessary adjustment in the community because of these conditions -- for which continued sex offender treatment is required.

*Roth*, 2012 WL 5499896, at *1; ECF No. 1-1 at 40-44. The Board Panel adopted the hearing officer's recommendation, reaffirmed the decision to revoke Petitioner's parole, ordered that he serve the adjusted maximum term as determined by the NJDOC, determined that he would receive parole consideration for his sex offender sentence when referred by the Special Classification Review Board ("SCRB"), and referred him to the ADTC for a Dalonges evaluation. The Board Panel stated that it would reconsider its decision when it received the Dalonges evaluation. (ECF No. 1-1 at 36, 40, and 44.)

Following the Dalonges evaluation, the two-member Board Panel re-affirmed its decision to revoke Petitioner's parole. The Board Panel stated that future consideration of parole would occur after any SCRB referral. *Roth*, 2012 WL 5499896, at *1.[2]

On or about March 27, 2011, Petitioner administratively appealed the Board Panel's March 24, 2011 decision to the full Board. (ECF No. 1-1 at 47-54.) On October 26, 2011, the full NJSPB affirmed ("Final Agency Decision") the Board Panel's decisions. *Roth*, 2012 WL 5499896, at *1; ECF No. 1-1 at 55-59.

Direct appeal and post-conviction relief ("PCR") proceedings followed. Given the complexity and length of Petitioner's manner of expressing his direct appeal and PCR claims (*see* ECF No. 1 at 4-12; ECF No. 1-1 at 62-97; ECF No. 1-2 at 49-51; ECF No. 7-3; *Roth*, 2012 WL 5499896, at *1-3; *Roth*, 2015 WL 5944153, at *1-3), and given their relevance to this Court's analysis, the Court will summarize them below.

**C. Direct Appeal Proceedings**

On direct appeal of the Final Agency Decision, Petitioner argued as follows:

---

[2] Pursuant to N.J. Stat. Ann. § 2C:47-5(a), the SCRB reviews parole eligibility for those persons classified as "repetitive and compulsive." *Roth*, 2012 WL 5499896, at *1.

> (1) The balance of a former sentence's parole term runs "during the period of the new imprisonment." He alleged that his incarceration for his March 2011 parole violation was therefore "an ex post facto violation" (ECF No. 7-3 at 3 and 8 ("Direct Appeal Claim 1"));
>
> (2) Under the double jeopardy principle, Petitioner had an "expectation of finality" as to his incarceration period, but then the NJSPB "illegal[ly] [took] jurisdiction over [him] by extend[ing] his maximum term of sentence" (*id*. at 3 and 19 ("Direct Appeal Claim 2")); and
>
> (3) The "philosophy of the Sex Offender Act under which [Petitioner] was convicted is that [he] require[s] treatment, not punishment. (*Id*. at 3 and 28 ("Direct Appeal Claim 3").)

On November 14, 2012, the Appellate Division affirmed the Final Agency Decision. *Roth*, 2012 WL 5499896, at *1 and *3; *Roth*, 2015 WL 5944153, at *1 and *3. Petitioner expressly acknowledges that he did not seek review by the New Jersey Supreme Court during direct appeal proceedings. (ECF No. 1 at ¶ 3(c) ("Petitioner did not seek further review by a higher state court").) Instead, he filed a petition for PCR. (*Id*. at ¶ 4(a).)

### D. Post-Conviction Relief Proceedings

Petitioner's PCR petition raised the following claims:

> (1) The NJSPB failed to comply with the time constraints of the Interstate Agreement on Detainers, N.J. Stat. Ann. § 2A:159A-1 to -15 ("IAD")[3], as to Petitioner's revocation hearing. The NJSPB's detainer against Petitioner prevented him from being eligible for Washington State's Sex Offender Treatment Program for fifteen years (ECF No. 1 at 7; ECF No. 1-1 at 84-86; ECF No. 1-2 at 82) ("PCR Claim 1");
>
> (2) The NJSPB "erred in revoking parole, as it misapplied the law existing at the time of [Petitioner's] 1982 parole warrant, resulting in [Petitioner] being subject to additional punishment in

---

[3] The Interstate Agreement on Detainers sets forth a procedure for the transfer of prisoners between jurisdictions for trial in the receiving jurisdiction. N.J.S.A. § 2A:159A-1, *et seq*.

violation of ex post facto" (ECF No. 1 at 7; ECF No. 1-1 at 70-72; ECF No. 1-2 at 82-83) ("PCR Claim 2");

(3) New Jersey courts "misappl[ied] N.J. Stat. Ann. § 2C:44-5, under which Petitioner's additional parole violation sentence should have been served concurrently" (ECF No. 1 at 7) ("PCR Claim 3");

(3)     Petitioner was "entitled to relief as a matter of public policy because his sexual offense and treatment abuse programs provided by Washington State were essentially ignored by the NJSPB" (ECF No. 1 at 7; ECF No. 1-2 at 83 and 94-95) ("PCR Claim 4")

(4)     The NJSPB unconstitutionally used Petitioner's Dalonges evaluation to revoke parole (ECF No. 1 at 7) ("PCR Claim 5");

(6)     New Jersey courts wrongfully refused to resentence Petitioner (ECF No. 1 at 7) ("PCR Claim 6");

(7)     The NJSPB unconstitutionally retained Petitioner in custody past his maximum sentence date (ECF No. 1 at 7-8) ("PCR Claim 7");

(8)     The NJSPB's requirement that the Staff Review Committee review Petitioner prior to the Special Classification Review Board's consideration was an additional step not required by law, which violated due process (ECF No. 1 at 8) ("PCR Claim 8"); and

(9)     The aggregate of the errors by the NJSPB and "New Jersey authorities" violated due process (ECF No. 1 at 8) ("PCR Claim 9").[4]

On July 25, 2013, the Honorable Verna G. Leath, J.S.C., denied the PCR. (ECF No. 1-2 at 49-51.) Petitioner appealed to the Appellate Division (ECF No. 1 at ¶ 6(a)), raising the following: (1) PCR Claims 1- 9; and (2) a claim that Judge Leath erred in determining that the PCR court lacked jurisdiction to grant Petitioner's requested relief. *Roth*, 2015 WL 5944153, at *2.

---

[4] Construing the record in Petitioner's favor, the Court accepts for purposes of this Opinion only that, as alleged in Petitioner's signed § 2254 Petition (*see* ECF No. 1 at 46), his PCR petition asserted PCR Claims 5 – 9. (*See* ECF No. 1 at 7-8.) The record before this Court contains the signed March 4, 2013 Certification of his counsel, John Vincent Saykanic, Esq., in support of PCR (*see* ECF No. 1-2 at 57-94) but does not include Petitioner's signed and time-stamped PCR petition itself. (*See* ECF No. 1-2 at 6; ECF No. 1-1 at 62, 96-97.)

On October 13, 2015, the Appellate Division affirmed Judge Leath for the reasons stated in her July 25, 2013 decision. The Appellate Division noted that Petitioner, having used a PCR petition to challenge the NJSPB's Final Agency Decision, had not appropriately asserted those claims. Since he was challenging the Final Agency Decision -- rather than his criminal convictions -- he should have sought relief from the Appellate Division, and not the PCR court. *Roth*, 2015 WL 5944153, at *2. Petitioner then filed a petition for certification (ECF No. 1 at ¶¶ 7-7(a); ECF No. 16 at 14-16), which the New Jersey Supreme Court denied on April 1, 2016. *State v. Roth*, 137 A.2d 533 (N.J. 2016).

**E. Habeas Petition**

On August 30, 2016, Petitioner filed his § 2254 Petition. (ECF No. 1.) He asserts the following nine claims (collectively, the "Habeas Claims")[5]:

> (1) The NJSPB unconstitutionally failed to comply with the IAD (*id*. at 14-23) ("IAD Claim");
>
> (2) The NJSPB unconstitutionally misapplied the law in effect at the time of Petitioner's 1982 parole warrant. Petitioner argues that before the 1984 amendment to N.J. Stat. Ann. § 2C:44-5c(3), his New Jersey parole terms imposed in 1978 and 1981 should have run concurrently to terms from his 1982 Washington conviction (*id*. at 24-27) ("Concurrent Parole Claim");
>
> (3) New Jersey courts misapplied N.J. Stat. Ann. § 2C:44-5, under which he should have concurrently served his additional parole violation sentence (*id*. at 27-28) ("Additional Sentence Claim");
>
> (4) The NJSPB unconstitutionally failed to consider Petitioner's sexual offense and substance abuse treatment programs in Washington (*id*. at 28-30) ("Treatment Program Claim");
>
> (5) The NJSPB unconstitutionally used Petitioner's Dalonges evaluation to revoke parole (*id*. at 30-34) ("Dalonges Claim");

---

[5] The Petition purports to assign numbers one through ten to Petitioner's habeas grounds. However, the Petition skips number nine.

7

(6) New Jersey courts wrongfully refused to resentence Petitioner (*id*. at 34-40) ("Resentencing Claim");

(7) The NJSPB unconstitutionally retained Petitioner in custody past his maximum sentence date (*id*. at 40-41) ("Maximum Sentence Claim");

(8) The aggregate of the errors by the NJSPB and "New Jersey authorities," as alleged in the Petition, violated due process (*id*. at 42-44) ("Aggregate Error Claim"); and

(9) The New Jersey PCR court erred in ruling that it lacked jurisdiction concerning Petitioner's requested relief (*id*. at 45-46) ("Jurisdictional Ruling Claim").

On January 26, 2017, this Court ordered Respondents to answer the § 2254 Petition (ECF No. 2), which they filed on April 11, 2017. (ECF No. 7.)

### III. ANALYSIS

#### A. Grounds One Through Seven of the § 2254 Petition Are Procedurally Defaulted

##### 1. Procedural Default Occurs when an Independent and Adequate State Procedural Rule Bars State Court Consideration of Petitioner's Claim

Under the procedural default doctrine, a federal court may not grant habeas relief if the state court's decision rests on a prisoner's violation of a state procedural rule. *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva v. Williams*, 504 F.3d 357, 365-66 (3d Cir. 2007); *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999). Federal courts may not consider the merits of such procedurally defaulted claims unless: (1) the petitioner establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of federal law; or (2) the prisoner demonstrates that failure to consider the claim

will result in a fundamental "miscarriage of justice." *Leyva*, 504 F.3d at 366; *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### 2. New Jersey Rule of Court 2:2-3(a)(2) Is an Independent and Adequate State Procedural Rule

For procedural default purposes in habeas review, New Jersey Rule of Court 2:2-3(a)(2) is an adequate and independent state procedural rule. The Rule provides, in pertinent part:

> [A]ppeals may be taken to the Appellate Division as of right … to review final decisions or actions of any state administrative agency or officer ... except that review pursuant to this subparagraph shall not be maintainable so long as there is available a right of review before any administrative agency or officer, unless the interest of justice requires otherwise.

N.J. Ct. R. 2:2-3(a)(2).

Rule 2:2-3(a)(2) is clearly established and regularly followed in New Jersey. *See*, *e.g.*, *State in re M.D.*, No. A-4737-15T1, 2018 WL 4653889, at *5 (N.J. Super. Ct. App. Div. Sept. 28, 2018) ("State parole board decisions are reviewable only by a direct appeal to our court") (internal citation omitted); *State v. Thomas*, No. A-5194-14T3, 2017 WL 106004, at *2 (N.J. Super. Ct. App. Div. Jan. 11, 2017) ("[D]efendant's claims were not appropriately raised through a PCR petition, as they challenged the Board's determinations and not his convictions"). Rule 2:2-3(a)(2) speaks in definitive terms. It undeniably confines review of state administrative agency rulings to direct appeals before the Appellate Division. With its clarity and its consistent application by New Jersey courts, Rule 2:2-3(a)(2) is an independent and adequate state procedural rule for procedural default purposes in habeas review. Petitioner fails to show otherwise. *See Leyva*, 504 F.3d at 365-66; *McCandless*, 172 F.3d at 260.

### 3. Petitioner Procedurally Defaulted on Habeas Grounds One through Seven

Petitioner asserted the IAD Claim, Concurrent Parole Claim, Additional Sentence Claim, Treatment Program Claim, Dalonges Claim, Resentencing Claim, and Maximum Sentence Claim (*i.e.*, Habeas Claims 1 - 7) during his PCR proceeding. (ECF No. 1 at 5-8.) Judge Leath ruled that New Jersey Rule of Court 2:2-3(a)(2) procedurally barred Petitioner's claims. (ECF No. 1-2 at 50-51.) The PCR judge explained as follows:

> Pursuant to *R*. 2:2-3 "the exclusive method for review of action or inaction of a State administrative agency, like the Parole Board, is by direct appeal to us [Appellate Division]." *Johnson v. State Parole Bd.*, 131 N.J. Super. 513, 517-20, (App. Div. 1974), *certif. denied*, 67 N.J. 94, 335 A.2d 47 (1975). The Supreme Court has exclusive rule making power to implement the constitutional requirement for "review, hearing and relief" in the Superior Court by action in lieu of prerogative writs, N.J. Const., art. VI, § V, P4, and R. 2:2-3(a)(2) embodies the means for reviewing inaction as well as action of a State administrative agency, *Johnson. supra*, 131 N.J. Super. at 517-18. This PCR Court finds that it does not have jurisdiction in overturning the decision of the New Jersey State Parole Board, that jurisdiction is vested on direct appeal to the Appellate Division.

(ECF No. 1-2 at 50-51.) Under Rule 2:2-3(a)(2), Petitioner could only challenge the Final Agency Decision via direct appeal to the Appellate Divsion. PCR proceedings before a trial court were not an available procedural route to do so.[6] Rule 2:2-3(a)(2) proscribed precisely the sort of procedural sidestepping that Petitioner attempted.

---

[6] The PCR judge also ruled that, pursuant to N.J. Ct. R. 3:22-5, the Appellate Division's November 14, 2012 affirmance of the Final Agency Decision during direct appeal was conclusive as to Petitioner's challenges that he tried to resurrect during PCR. (ECF No. 1-2 at 50; *Roth*, 2012 WL 5499896, at *1 and *3; *Roth*, 2015 WL 5944153, at *1 and *3.) *See* N.J. Ct. R. 3:22-5 ("A prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings"). At the time the PCR court considered Petitioner's claims, the Appellate Division had previously adjudicated those claims on the merits. (ECF No. 1-2 at 50.) Judge Leath also pointed out that, under Rule 3:22-3, PCR "is neither a substitute for direct appeal nor an opportunity to relitigate

Given that Judge Leath's decision plainly stated that the PCR court was relying on Rule 2:2-3(a)(2) to reject Petitioner's claims, this Court may not reach the merits of those procedurally defaulted claims, which he now re-asserts in Grounds One through Seven of the § 2254 Petition.[7] *Coleman*, 501 U.S. at 729, 737 (when a state court decision plainly states that it is relying on independent and adequate state law grounds to deny a federal claim, a habeas court may not reach the merits of the federal claim); *Walker v. Martin*, 562 U.S. 307, 316 (2011); *Williams v. Wynder*, 232 F. App'x 177 (3d Cir. 2007) (where state procedural rules time-barred petitioner from filing an appeal of state parole board's parole revocation decision, habeas relief was barred because of petitioner's unexcused procedural default for failing to exhaust his claim).

> **4. New Jersey Rule of Court 2:2-3(a)(2) Bars Petitioner from Now Returning to State Court as to Grounds One through Seven. Therefore, the Exhaustion Requirement Is Met as to those Habeas Claims**

This Court recognizes that, given the manner in which Petitioner framed his Direct Appeal Claims 1-3 and PCR Claims 1-9: (1) there could be overlap between (a) one or more of his Habeas Claims and (b) one or more of either his Direct Appeal Claims or PCR Claims; and (2) he might not have exhausted one or more such claims as described in (1).

---

cases already decided on the merits." (ECF No. 1-2 at 50 (citing N.J. Ct. R. 3:22-3).) That state procedural rule (1) confined Petitioner's assertion of his claims to direct appeal all the way to the New Jersey Supreme Court; and (2) precluded re-litigation of his challenges to the Final Agency Decision. (ECF No. 1-2 at 50.)

[7] Respondents raise the issue of procedural default in the context of Petitioner's failure to demonstrate good cause to overcome procedural default, and his failure to exhaust. (ECF No. 7-1 at 16-18.) In the present case, procedural default and failure to exhaust are interrelated, as discussed in this Opinion. Accordingly, the Respondents have not waived procedural default as an affirmative defense. (*See* ECF No. 2 at 4) ("Respondents shall raise by way of answer any appropriate defenses which they wish to have the Court consider, including, but not limited to, exhaustion and procedural default[.]").

Habeas relief may not be granted unless a petitioner has "exhausted the remedies available in the courts of the State," there is an absence of process in the state courts, or there are circumstances which render the state process ineffective. 28 U.S.C. § 2254(b)(1); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (a state prisoner must exhaust his available state remedies before seeking federal habeas relief); *Newton v. Phelps*, 943 F. Supp. 2d 494, 499 (D. Del. 2013) ("[O]ne prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts") (citing 28 U.S.C. § 2254(b)(1)). A petitioner generally satisfies this exhaustion requirement when he has presented his claims to the highest state court. *See Picard v. Connor*, 404 U.S. 270, 275 (1971). Conversely, "[w]here any available procedure remains for the applicant to raise the question presented in the courts of the state, the applicant has not exhausted the available remedies." *Tinsley v. Johnson*, No. 10-3365, 2011 WL 5869605, at *3 (D.N.J. Nov. 22, 2011); *accord* 28 U.S.C. § 2254(c).

However, this Court need not address the possibility that Petitioner may not have exhausted one or more claims in Grounds One through Seven. "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" *McCandless*, 172 F.3d at 260 (citing 28 U.S.C. § 2254(b)). In the instant case, because New Jersey Rule of Court 2:2-3(a)(2) bars Petitioner from returning to state court to pursue relief on the IAD Claim, Concurrent Parole Claim, Additional Sentence Claim, Treatment Program Claim, Dalonges Claim, Resentencing Claim, and Maximum Sentence Claim, those claims (*i.e.*, Habeas Claims One through Seven) are considered exhausted. Claims deemed exhausted because of a state procedural bar are procedurally defaulted. *See*, *e.g.*, *Lines v. Larkins*, 208 F.3d 153, 159-60 (3d Cir. 2000) (*citing McCandless*, 172 F.3d at 260).

That said, "if a possibility remains that the [state's highest court] will consider [a habeas] claim, then [that claim] is unexhausted and [should instead] be dismissed [without prejudice]." *Carrascosa v. Hoffman*, No. 15-5956, 2018 WL 3756441, at *7 (D.N.J. Aug. 8, 2018) (citing *Pombrio v. Hense*, 631 F. Supp. 2d 1247, 1251 (C.D. Cal. 2009) and *Marchand v. Tyson*, 560 F. Supp. 882, 885 (N.D. Ind. 1983) ("It is not for this Court to weigh the relative likelihood of success petitioner's post-conviction filing might meet in state court; so long as petitioner is afforded a post-conviction vehicle by which to present the issues now before this Court to the state courts first, the petition must be dismissed for failure to exhaust")). In Petitioner's case, no such possibility exists.

The PCR court expressly stated that he may not return to state court on his PCR Claims (which he now asserts in Habeas Claims One through Seven). (ECF No. 1-2 at 50-51.) Given the certainty of Judge Leath's pronouncement and the Appellate Division's affirmance of it, this Court need not simply "presume how the state courts would rule on' procedural default." *See Mathis v. Attorney Gen. of New Jersey*, 732 F. App'x 138, 142 (3d Cir. 2018). Rather, this Court can confidently conclude that Petitioner's procedurally defaulted claims in Grounds One through Seven may be deemed exhausted because he may not return to state court to pursue them. For that reason, this Court need not address the possibility that Petitioner may not have exhausted one or more of his Habeas Claims. Instead, Grounds One through Seven meet the exhaustion requirement because there is an absence of available State corrective process. N.J. Ct. R. 2:2-3(a)(2) bars him from seeking further relief in state courts.

### 5. Petitioner Has not Shown Cause and Prejudice or a Fundamental Miscarriage of Justice to Excuse His Procedural Default

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred

unless the prisoner can demonstrate (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or, (2) that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *Buxton v. Pennsylvania*, 398 F. App'x 704, 707 (3d Cir. 2010) (citing *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002) (quoting *Coleman*, 501 U.S. at 750)).

To demonstrate "cause" in this context, the circumstance must be something external to the petitioner that cannot fairly be attributed to him. *Leyva*, 504 F.3d at 366 (internal citations omitted). "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded … efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). For example, "a showing that … 'some interference by officials' ... made compliance impracticable would constitute cause under this standard." *Ibid.* To demonstrate fundamental miscarriage of justice in this context, a petitioner must typically show "actual innocence." *Leyva*, 504 F.3d at 366 (internal citation omitted).

Here, Petitioner's violation of Rule 2:2-3(a)(2) did not result from factors beyond his control. His decision to seek review of the NJSPB's Final Agency Decision via a PCR proceeding can "fairly be attributed to him." *See Lines*, 208 F.3d at 166 (quoting *Coleman*, 501 U.S. at 753). He represented himself in the PCR case. (ECF Nos. 1-1 at 60-98.) In his § 2254 Petition, traverse, and supporting materials, he has neither asserted nor demonstrated an external factor that impeded his efforts with respect to his claims, actual prejudice, or innocence of the crimes. (*See* ECF Nos. 1, 1-1, 1-2, and 16.) Therefore, Petitioner has not demonstrated the sort of cause or prejudice for the Court to excuse his procedural default.

Grounds One through Seven of the Petition are denied as procedurally defaulted.

## B. Habeas Relief Is Unavailable for Ground Nine because the PCR Court's Jurisdictional Ruling Was Based on an Adequate and Independent State Law Ground

Ground Nine alleges that the PCR court erred in ruling that it lacked jurisdiction concerning Petitioner's requested relief. (ECF No. 1 at 45-46.) Petitioner raised the Jurisdictional Ruling Claim during his appeal of the PCR decision to the Appellate Division. (ECF No. 1 at ¶ 6(a); *Roth*, 2015 WL 5944153, at *2.)

On October 13, 2015, the Appellate Division affirmed Judge Leath. The Appellate Division explained that Petitioner, having used a PCR petition to challenge the NJSPB's Final Agency Decision, had not appropriately asserted those claims. His claims disputed the Final Agency Decision -- rather than his criminal convictions. Direct appeal was his exclusive means of redress. *Roth*, 2015 WL 5944153, at *2 (citing N.J. Ct. R. 2:2-3(a)(2) (other citations omitted).

"On habeas review, [a] [habeas] Court must determine whether the procedural rule applied by the state court is independent and adequate, but is not at liberty to second-guess the state court's application of its own independent and adequate rule." *See*, *e.g.*, *Johnson v. Mechling*, 541 F. Supp. 2d 651, 680 (M.D. Pa. 2008). Habeas courts must defer to a state court's application of an independent and adequate state procedural bar to consideration of the merits of a claim. *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law"). The "adequacy" of the state procedural rule does not include an inquiry into whether the state erroneously applied its own rule in a particular case, and "courts have repeatedly counseled [this] is not a cognizable claim on habeas." *Tillery v. Horn,* 142 F. App'x 66, 68 (3d Cir. 2005) (refusing to examine correctness of state court determination that an ineffective assistance of counsel claim was procedurally defaulted in the state courts); *Estelle v. McGuire,* 502 U.S. 62, 68 (1991) ("[I]t is not in the province of a federal habeas court to reexamine state-court determinations

on state-law questions"). This remains true even if the state procedural ruling is incorrect. *Estelle,* 502 U.S. at 71–72. *See also Kontakis v. Beyer,* 19 F.3d 110, 117 n. 12 (3d Cir. 1994) (noting that "a state court's misapplication is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States") (citations omitted).

As a result, this Court may not re-examine the PCR court and Appellate Division's determinations under N.J. Ct. R. 2:2-3(a)(2) that the Appellate Division's prior adjudication was conclusive of Petitioner's claims, and that only the Appellate Division has jurisdiction to overturn the NJSPB's Final Agency Decision. (ECF No. 1-2 at 50-51; *Roth*, 2015 WL 5944153, at *2.) As noted *supra*, N.J. Ct. R. 2:2-3(a)(2) is clearly established and regularly followed in New Jersey. *See Interest of M.D.*, 2018 WL 4653889, at *5 ("Had M.D. disagreed with the full [parole] board's decision, a final agency decision, a notice of appeal to the Appellate Division would have been the next step pursuant to Rule 2:2-3(a)(2). State parole board decisions are reviewable only by a direct appeal to our court") (citation omitted); *Thomas*, 2017 WL 106004, at *2 ("defendant's claims were not appropriately raised through a PCR petition as they challenged the Board's determinations and not his convictions, *R.* 2:2–3(a)(2)"). Accordingly, the Jurisdictional Ruling Claim is not a cognizable habeas claim.

Furthermore, a federal court "has no authority to issue the writ of habeas corpus unless the [state] [c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40 (2012) (quoting 28 U.S.C. § 2254(d)). Petitioner has not identified any United States Supreme Court decision as to which the

Jurisdictional Ruling Claim was contrary or an unreasonable application. This Court has not identified any either.

Ground Nine is denied.

### C. Ground Eight: The Aggregate Error Claim Does not Warrant Habeas Relief

Ground Eight argues that the aggregate of the errors by the NJSPB and "New Jersey authorities," as alleged in the Petition, violated due process. (ECF No. 1 at 42-44.) Petitioner raised the Aggregate Error Claim during his PCR proceeding. (ECF No. 1 at 8.) Although not expressly addressing the merits of that particular claim, Judge Leath effectively rejected it when she (1) found no basis to Petitioner's contention that the NJSPB violated the IAD (ECF No. 1-2 at 49-50); (2) rejected Petitioner's argument that his additional New Jersey parole violation term should have run concurrently to his sentence for his new offenses in Washington. Judge Leath explained that the pre-1984 version of N.J.S.A. § 2C:44-5(c), on which Petitioner was relying, did not apply to out-of-state convictions; and (3) determined that the PCR court "[did] not have jurisdiction in overturning the decision of the New Jersey State Parole Board, [and] that jurisdiction is vested on direct appeal to the Appellate Division." (*Id*. at 49-51.)

"The cumulative error doctrine allows a petitioner to present a stand-alone claim asserting the cumulative effect of errors at trial so undermined the verdict as to constitute a denial of his constitutional right to due process." *Collins v. Sec'y of Pennsylvania Dep't of Corr.*, 742 F.3d 528, 533, 542 (3d Cir. 2014). "Individual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process." *Id*. (quoting *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008)). The test for a "cumulative error" claim is whether the overall deficiencies "so infected the trial with unfairness as to make the resulting conviction a denial of

due process." *Muniz v. Powell*, No. 13-178, 2015 WL 511618, at *15 (D.N.J. Feb. 6, 2015) (citing *Hein v. Sullivan,* 601 F.3d 897, 917 (9th Cir. 2010) (relying on *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)); *see also Fahy,* 516 F.3d at 205 ("[A] habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice'").

To the extent Ground Eight alleges an aggregate of errors premised upon Petitioner's claims in Grounds One through Seven, the latter claims are procedurally defaulted and cannot sustain Ground Eight. *See Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) (en banc) (holding that cumulative error relief is available if the individual errors were themselves not procedurally defaulted).[8]

To the extent Ground Eight alleges an aggregate of errors premised upon Petitioner's claims in Ground Nine, the latter claims do not warrant habeas relief and cannot sustain a cumulative error claim in Ground Eight. There is no basis for habeas relief premised upon an alleged accumulation of errors that does not exist. *See, e.g., Muniz*, 2015 WL 511618, at *15; *Stewart v. United States*, No. 12-346, 2014 WL 3573395, at *12 (D.N.J. July 21, 2014).

For these reasons, Petitioner is not entitled to federal habeas relief on Ground Eight.

---

[8] In *Collins v. Sec'y of Pennsylvania Dep't of Corr.*, 742 F.3d 528 (3d Cir. 2014), the petitioner failed to present his cumulative error claim to the Pennsylvania Supreme Court as an individual claim for relief. *Id*. at 542-43. Discussing *Derden* and other federal circuit court cases, the Third Circuit in *Collins* held: "[A] claim of cumulative error must be presented to the state courts before it may provide a basis for habeas relief." *Id*. at 542-43. With the *Collins* petitioner having procedurally defaulted his cumulative error claim, the Third Circuit determined that the claim was not properly before the court on habeas review. *Ibid*. In the instant case, however, Petitioner did raise the Aggregate Error Claim in his PCR petition, and he petitioned for certification to the New Jersey Supreme Court after Judge Leath rejected the Claim. (ECF No. 1 at 8; ECF No. 1-2 at 49-51; ECF No. 1 at ¶¶ 7-7(a); ECF No. 16 at 14-16; *State v. Roth*, 137 A.2d 533 (N.J. 2016).) The Third Circuit's discussion in *Collins* of cumulative error is thus factually distinguishable from the present case. Furthermore, this Court is not aware of any controlling precedent holding that procedurally defaulted claims (such as Grounds One through Seven herein) can sustain a cumulative error claim.

## VI. CERTIFICATE OF APPEALABILITY

The AEDPA provides that an appeal may not be taken to the court of appeals from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), the United States Supreme Court held: "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. This Court denies a certificate of appealability because jurists of reason would not find it debatable that denial of the Petition is correct.

## VII. CONCLUSION

For the reasons set forth above, the Petition will be denied with prejudice as procedurally defaulted as to Grounds One through Seven, and not warranting federal habeas relief as to Grounds Eight and Nine. A certificate of appealability shall not issue. An appropriate Order accompanies this Opinion.

9/6/19  
Date

s/ John Michael Vazquez  
JOHN MICHAEL VAZQUEZ  
United States District Judge